UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ALBERT RODRIGUEZ,

        Plaintiff,

v.

ORKIN, LLC., a Delaware limited liability company,

        Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Albert Rodriguez, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint and Jury Demand against Orkin, LLC ("Defendant" or the "Company") states and alleges as follows:

### PRELIMINTARY STATEMENT

1. This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination toward and wrongful termination of Plaintiff because he suffered from a disability within the meaning of the Americans with Disabilities Act, as amended ("ADA") related to an on-the-job injury.

2. More specifically, on or about May 15, 2018, Plaintiff was working when he severely injured his back. He filed a workers' compensation claim soon thereafter and went on medical leave. Throughout his medical leave, Plaintiff kept his supervisor updated on his treatment and recovery. On or about September 21, 2018, Plaintiff's supervisor sent him an email

saying, "This is to confirm that once you are medically cleared to return to full duty work, you will return to your previous full time position running the same route that you were assigned in May 2018." However, Plaintiff's supervisor stopped taking or returning Plaintiff's calls after approximately six months of leave.

3. In or around the beginning of May 2019, Plaintiff was released to return to work with the temporary restriction of working 3-4 hours each day. The Company failed to accommodate Plaintiff's disabling on-the-job injury when it refused to allow him to return to work with temporary restrictions, instead insisting that Plaintiff would have to be 100% recovered and able to work a full schedule before he was allowed to return to work.

4. On or about July 15, 2019, Plaintiff was released to return to work without restrictions. The Company claimed there were supposedly no positions available for Plaintiff. However, since early May 2019, two positions had been posted as vacant with the Company that Plaintiff was qualified to perform. The Company claimed one position posting was "a misprint," though the position remained posted online until approximately August 2019. The Company claimed the other position was not available for Plaintiff because the Company purportedly did not want him driving that far to the office. However, the position would have required Plaintiff to drive only 10-15 miles farther than the route he had at the time of his disabling injury. Also, at the time, the Company allowed another, non-disabled employee to commute approximately one hour and 20 minutes to get to their work location; Plaintiff's commute would have taken less time. In other words, Defendant's claimed reasons for terminating Plaintiff were mere pretext for discrimination and/or retaliation.

5. In addition to the foregoing, Defendant failed to comply with the Consolidated

Omnibus Budget Reconciliation Act ("COBRA") when it terminated his employment. At no time after his termination did Plaintiff receive notice under COBRA that would allow him to continue receiving health insurance benefits.

## PARTIES

6. Plaintiff Albert Rodriguez is, and at all times relevant to this Complaint was, a resident of Colorado.

7. Defendant Orkin, LLC is a Delaware limited liability company with a principal office located in Georgia at: 2170 Piedmont Road NE, Tax Department, Atlanta, Georgia 30324.

8. Defendant is an employer within the meaning of 42 U.S.C. § 12111(5)(A), in that it has 15 or more employees each working 20 or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

9. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

10. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. This Court also has original jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

12. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

13. Plaintiff filed his Charge of Discrimination Number 32A-2020-00209 with the Equal Employment Opportunity Commission ("EEOC") for retaliation and disability discrimination on or about January 6, 2020. Plaintiff was issued a Notice of Right to Sue with respect to the above-referenced Charge Number pursuant to 42 U.S.C. § 2000e-5(f)(1) on September 2, 2020. Plaintiff filed the present action within ninety (90) days of receipt of same.

14. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

15. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

16. Plaintiff began working for Defendant in or around April 2009. At all times relevant, Plaintiff was a Route Manager/Technician.

17. At all relevant times during his employment with Defendant, Plaintiff met or exceeded his employer's legitimate performance expectations.

18. On or about May 15, 2018, Plaintiff was working when he severely injured his back. That same day, Plaintiff notified his supervisor at the time, Jeremy Deboer, of his injury and initiated a workers' compensation claim.

19. Plaintiff was placed on leave while receiving treatment for his disabling on-the-job injury for a duration that ended up being approximately one year.

20. During Plaintiff's medical leave, Stacy Drummey became his direct supervisor.

21. Throughout his medical leave, Plaintiff would attempt to update Ms. Drummey regarding his treatment and recovery approximately once each month.

22. On or about September 21, 2018, Ms. Drummey sent Plaintiff an email saying:

"This is to confirm that once you are medically cleared to return to full duty work, you will return to your previous full time position running the same route that you were assigned in May 2018."

23. However, after approximately six months, Ms. Drummey stopped taking or returning Plaintiff's calls intended to update her on his treatment and recovery.

24. In or around the beginning of May 2019, Plaintiff was released to return to work for 3-4 hours each day.

25. Ms. Drummey still did not return Plaintiff's calls regarding Plaintiff's return to work with the temporary request for accommodation of working 3-4 hours each day.

26. Plaintiff's case manager for his workers' compensation claim eventually told Plaintiff that she had gotten in touch with Ms. Drummey and that the Company did not want Plaintiff to come back to work unless he was 100% recovered and could work a full schedule.

27. Defendant therefore failed to reasonably accommodate Plaintiff's disability and failed to engage in an interactive process in good faith regarding his requested accommodation.

28. On or about July 15, 2019, Plaintiff was released to return to work with no restrictions.

29. Again, Ms. Drummey initially did not return Plaintiff's calls regarding his return to work.

30. Eventually, on or about July 23, 2019, Ms. Drummey answered Plaintiff's call and immediately told him to wait while she got Defendant's human resources on the phone. Ms. Drummey told Plaintiff there were no positions available for him.

31. Plaintiff pointed out that there were two positions posted as vacant online that had been posted since May 2019, each of which Plaintiff was qualified to perform.

32. Ms. Drummey claimed that the position posted for the Silverthorne location where Plaintiff had worked at the time of his injury was "a misprint."

33. However, the position vacancy – Route Service Specialist in Silverthorne, Colorado – remained posted online as vacant until approximately August 2019.

34. The second position vacancy posted online with Respondence since approximately early May 2019 was for a Commercial Pest Control Technician position in Eagle, Colorado.

35. Ms. Drummey claimed Plaintiff could not return to work in that position because she did not want him to be driving that far.

36. However, the position vacancy in Eagle, Colorado, would have been only 10-15 miles farther than the commute Plaintiff had prior to his disabling injury. Though Defendant has since claimed that Plaintiff was not qualified for this position because the Company purportedly had a practice of not allowing more than a 90-minute commute for its employees, Plaintiff's commute to the position in Eagle, Colorado would have taken less than 90 minutes to complete.

37. Also, upon information and belief, around the time of Defendant's decision to terminate Plaintiff, the Company allowed another, non-disabled employee that lived in Fairplay, Colorado drive to the Company's location in Vail, Colorado for work – a commute of approximately one hour and 20 minutes.

38. In its Position Statement submitted to the Colorado Civil Rights Division ("CCRD"), Defendant claimed it "reconfigured the routes" in the Silverthorne branch Plaintiff worked at when he was injured in May 2019 – the same month Plaintiff requested to be allowed to return to work with the temporary restriction of working 3-4 hours each day – resulting in Plaintiff's position being eliminated. In other words, Defendant purportedly decided to essentially

eliminate Plaintiff's position once he requested the reasonable accommodation of temporarily being allowed to return to work with restricted hours.

39. Defendant's Position Statement further states it terminated Plaintiff's employment effective July 25, 2019, after he attempted to return to work with no restrictions.

## FIRST CLAIM FOR RELIEF
### (Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))

40. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

41. At the time Defendant effectively decided to eliminate Plaintiff's position, Plaintiff was a disabled person within the meaning of the ADA.

42. Plaintiff continues to use ameliorative devices to treat his back condition.  In its active state, and without regard to ameliorative devices, Plaintiff's back condition would substantially limit Plaintiff's ability to perform one or more major life activities as compared to the general population.

43. At the time Defendant effectively decided to eliminate Plaintiff's position, Plaintiff was qualified for his job and capable of performing the essential functions of his position with reasonable accommodation.

44. Plaintiff was regarded as being disabled by Defendant at the time Defendant decided to effectively eliminate Plaintiff's position and terminate his employment.

45. Plaintiff was also regarded as being disabled by Defendant at the time Defendant refused to offer Plaintiff a position vacancy for which he was qualified, deciding instead to terminate his employment because of his disability.

46. Defendant further discriminated against Plaintiff because of his disability by not making temporary, reasonable accommodation for Plaintiff, failing to engage in an interactive process calculated to develop a reasonable accommodation for Plaintiff, and instead imposing continued, involuntary leave from work in lieu of providing Plaintiff with a reasonable accommodation that would have enabled him to return to work on a temporarily reduced schedule. Such reasonable accommodation would have permitted Plaintiff to perform the essential functions of his position in the near future and would not have worked any undue hardship on Defendant.

47. On or about July 25, 2019, if not sooner, Defendant discriminated against Plaintiff because of his disability by subjecting him to less favorable terms, conditions, and privileges of employment, effectively eliminating his position, refusing to offer him one or more position vacancies he was qualified to perform, and terminating his employment because of Plaintiff's disability.

48. The effect of Defendant's discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of Plaintiff's disability, and/or Defendant's failure to reasonably accommodate Plaintiff's disability.

49. Defendant's above-described conduct was intentional.

50. Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally protected rights.

51. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages,

economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a))**

52.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

53.     Since at least May 2018, if not earlier, Plaintiff made requests for reasonable accommodation related to his disability. For instance, Plaintiff requested the reasonable accommodation of leave from work to recover from his disabling on-the-job injury. In doing so, Plaintiff was engaging in activity protected under the ADA.

54.     In or around the beginning of May 2019, Plaintiff requested the reasonable accommodation of being allowed to return to work on a temporarily reduced schedule, working 3-4 hours each day. In doing so, Plaintiff was engaging in activity protected under the ADA.

55.     Defendant retaliated against Plaintiff after he engaged in the above-described protected activity.

56.     More specifically, Plaintiff suffered one or more adverse job consequences intentionally imposed by Defendant, including: forcing Plaintiff on continued involuntary leave; effectively eliminating Plaintiff's position; refusing to offer Plaintiff one or more position vacancies for which he was qualified; and terminating Plaintiff's employment. These consequences are of the type that would tend to discourage similarly situated employees from requesting or using accommodations related to a disability.

57.     A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e., Defendant refused to allow Plaintiff to return to work on a

temporarily reduced work schedule, effectively eliminated Plaintiff's position, refused to offer Plaintiff one or more position vacancies for which he was qualified, and terminated Plaintiff because he requested and/or used reasonable accommodations related to his disabling medical condition.

58. Defendant's above-described conduct was intentional.

59. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally protected rights.

60. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**(Wrongful Termination in Violation of Public Policy)**

61. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

62. Plaintiff's employment was terminated by Defendant in retaliation for him being injured on the job and his filing of a valid Workers' Compensation claim and, thus, exercising his rights under the Workmen's Compensation Act of Colorado, C.R.S. § 8-4-101, *et seq.*

63. Defendant's termination of Plaintiff's employment was in violation of strong public policy of the state of Colorado.

64. Plaintiff suffered mental and emotional distress as a direct and proximate result of Defendant's above-described acts and omissions.

65. Plaintiff has suffered and will suffer lost wages and employment benefits as a direct

and proximate result of Defendant's above-described acts and omissions.

66. The above-described acts and omissions of Defendant were willful, malicious, oppressive, and calculated to discourage Plaintiff and Defendant's other employees from pursuing job-related rights under Colorado law.

67. As a result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and he is entitled to such general and special damages, economic damages, and garden-variety emotional distress damages as permitted by law.

**FOURTH CLAIM FOR RELIEF**
**(Violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"))**

68. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

69. COBRA requires that employers allow employees the opportunity to continue health care coverage under the employer's plan, at their own expense, if a qualifying event occurs, such as a termination or a reduction in hours.

70. The notice requirements of COBRA require that an employer give an employee notice of a qualifying event. 29 U.S.C. § 1166(a)(4)(A).

71. Upon information and belief, Plaintiff continued to have health insurance benefits through Defendant until his termination in July 2019.

72. Plaintiff was therefore a covered employee under COBRA at the time of his termination from employment and Defendant was required to offer Plaintiff continuation of health coverage.

73. Defendant was required by COBRA to notify Plaintiff of his rights under the law

to elect a continuation of his health insurance benefits after Defendant terminated Plaintiff's employment.

74. Upon information and belief, Defendant failed to provide Plaintiff the notices under COBRA to elect a continuation of his health insurance benefits after a qualifying event; i.e., after Defendant terminated Plaintiff's employment.

75. Defendant's termination of Plaintiff's employment without adequate notice to Plaintiff regarding his continuation of benefits was in bad faith, has damaged Plaintiff, and Plaintiff seeks statutory penalties and all equitable and legal relief resulting from said violation in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

D. All relief available under COBRA, including statutory penalties and pre-judgment interest at the highest lawful rate;

E. Punitive damages for all claims as allowed by law;

F. Attorneys' fees and costs of this action;

G. Pre-judgment and post-judgment interest at the highest lawful rate; and

H. Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 15th day of October, 2020.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Shelby Woods*
    Claire E. Hunter
    Shelby Woods
    HKM Employment Attorneys LLP
    703 17th Street, Suite 750
    Denver, Colorado 80202
    chunter@hkm.com
    swoods@hkm.com
    *Attorneys for Plaintiff Albert Rodriguez*